IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 1:07-CR-153-02** |
| **v.** | : | **JUDGE SYLVIA H. RAMBO** |
| **JAMEL EASTER** | : | |

# M E M O R A N D U M

Before the court is Defendant Jamel Easter's Motion to Suppress Evidence (Doc. 56). The parties have briefed the issue and the court conducted a hearing on November 28, 2007; thus, the matter is ripe for disposition. For the reasons that follow, the court will deny the motion.

**I.      Background**

   **A.      Procedural Background**

Defendant was indicted on various drug charges on April 11, 2007. Defendant filed a Motion to Suppress Evidence on June 6, 2007 (Doc. 56). A brief in support was filed on November 5, 2007 (Doc. 99). The Government filed its opposition brief on November 15, 2007 (Doc. 108). The court subsequently held a hearing on the issue on November 28, 2007. Testimony was taken from Drug Enforcement Administration ("DEA") Agent Bill Cook, Harrisburg Police Department Detective Levell Jenkins, and Federal Bureau of Investigation ("FBI") Special Agent Bruce Doupe.

   **B.      Factual Background**

The facts, as presented at the hearing, are as follows. On March 27, 2007 a confidential informant ("CI") working with the FBI notified Special Agent

Bill Cook that an individual identifying himself as "Mel"[1] had called to indicate that he was interested in purchasing a quantity of cocaine base from the CI. The CI had provided reliable information to the FBI in the past, and he had been approved by FBI supervisors and received instructions only to work under FBI guidelines. With the consent of the CI, the FBI recorded subsequent telephone conversations between "Mel" and the CI in which the parties arranged the purchase of the drugs. In those conversations, "Mel" informed the CI that he and a cousin "C-Lo" were interested in purchasing 9 ounces of cocaine base for $6000. The exchange was to work as follows: The parties would meet at the corner of Reel Street and Wiconisco Street in Harrisburg on March 28, 2007. "Mel" and "C-Lo" would hand over the money to the CI. The CI would then retrieve the drugs from another location and complete the exchange.

      About an hour after the agreed upon time, Defendant Jamel Easter arrived at the intersection of Reel and Wiconisco by car. Defendant was driving, Carl Easter was seated in the front seat, and Joe Moore and another unidentified passenger were in the back. The CI entered the backseat of the car wearing an audio device that transmitted the conversation to law enforcement officers stationed nearby. Carl Easter handed currency to the CI and when the officers heard the sound of money being counted, they moved in to make an arrest.

      Detective Levell Jenkins of the Harrisburg Police Department was a member of the surveillance and arrest team. When he heard the money being counted, he pulled his vehicle alongside Defendant's vehicle to block it in.

---

[1] Special Agent Cook testified that "Mel" was later identified as Defendant Jamel Easter. (Suppression Hr'g, Nov. 28, 2007.)

Defendant, who was parallel parked on a one-way street, placed the car into gear and drove over the curb and sidewalk to escape. As Defendant rounded a corner, the CI and the unidentified occupant of the car rolled out of the vehicle.

Detective Jenkins pursued the vehicle, which crashed a few blocks away. Defendant and Joseph Moore fled from the car, and Detective Jenkins followed. He saw Defendant reach toward his waistband and pull out a plastic bag. Shortly thereafter, Defendant fell to the ground, quickly got back up, and ran into an abandoned building where he was arrested. At the location where Defendant fell, officers recovered some currency, a plastic bag containing suspected cocaine, and a gun. A search of Defendant after he was arrested yielded marijuana and additional currency.

Agent Cook testified that while Defendant was waiting in handcuffs after his arrest Defendant indicated that he wished to speak to the agent. Agent Cook stated that he told Defendant that he would not talk to him because the other defendants were present. No *Miranda* warnings were issued at that time, and Agent Cook testified that Defendant did not produce a statement at the scene. At the station after his arrest, Agent Cook testified that he administered *Miranda* warnings to Defendant by reading them verbatim from a DEA 13A card. Agent Cook admitted that he did not ask Defendant about his educational level, reading and writing ability, or history of drug use. He also stated that Defendant seemed "a little slow" but not unusually so. After receiving the warnings Agent Cook testified that Defendant said that he wished to waive his rights and make a statement. The questioning continued and Defendant proceeded to make incriminating statements concerning his involvement in the transaction.

**II.       Discussion**

The issue before the court is whether Defendant's statements and physical evidence recovered at the scene of his arrest were obtained in violation of Defendant's Fourth and Fifth Amendment rights and must be suppressed.[2] Defendant claims he was arrested without probable cause in violation of the Fourth Amendment, and that the fruits of that arrest—the physical evidence recovered from the scene and statements made at the police station[3]—must be suppressed. In the alternative, Defendant claims that his statements should be suppressed because they were obtained in violation of his Fifth Amendment right against compelled self-incrimination. The court must determine: (1) whether Defendant's arrest was supported by probable cause, and (2) whether Defendant's statements must be suppressed because they were obtained in violation of the Fifth Amendment.

---

[2] In his motion papers, Defendant also claimed that evidence should be suppressed because his conversations with the CI were intercepted in violation of federal wiretap law. This argument is without merit. Though the law in question, 18 U.S.C. § 2510 et seq., generally prohibits warrantless wiretaps, it also provides that "[i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception. 18 U.S.C. § 2511(2)(c). In this case, the uncontroverted testimony of Agent Cook established that the CI was acting under color of law and had provided prior consent to the recording and interception of his conversations with Defendant. Thus, the conversations were not unlawfully intercepted in violation of the statute.

[3] In his motion Defendant also seeks suppression of statements allegedly made immediately after his arrest. However, there is no evidence that Defendant was questioned by law enforcement officials at the scene of his arrest, and Agent Bill Cook testified that no statement was made. (Suppression Hr'g, Nov. 28, 2007.) With no statement made, there is no evidence to suppress. Accordingly, the court's analysis will focus on the physical evidence recovered at the scene and Defendant's statements made at the police station.

### 1. Constitutionality of Arrest

Defendant claims that he was arrested without probable cause and that his post-arrest statements and physical evidence recovered at the scene of the arrest must be suppressed. The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures, and requires an arrest to be supported by probable cause. *Florida v. Royer*, 460 U.S. 491 (1983). "Law enforcement authorities do not need a warrant to arrest an individual in a public place so long as they have probable cause to believe that person has committed a felony." *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992) (citing *United States v. Watson*, 423 U.S. 411, 423 (1976)); *United States v. Burton*, 288 F.3d 91, 98 (3d Cir. 2002). An officer has probable cause to arrest "where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe that an offense had been committed." *McGlory*, 968 F.2d at 342; *see also Beck v. Ohio*, 279 U.S. 89, 91 (1964); *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990). Probable cause is determined by examining the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002); *Paff v. Kaltebach*, 204 F.3d 425, 436 (3d Cir. 2000).

Here, at the moment Defendant was arrested, officers had information from an FBI informant who had provided reliable information in the past, that an individual identified as "Mel" was interested in purchasing cocaine from the CI. The details of the drug transaction were corroborated by recorded telephone conversations between Defendant and the CI arranging the time and place to meet, and the quantity and price of the drugs to be purchased. At the agreed-upon time

and place, Defendant appeared, along with co-defendants Carl Easter and Joseph Moore.  A coordinated surveillance team observed the CI enter the car and heard currency being counted.  Considering the totality of the circumstances, at the time of the arrest the officers had probable cause to believe that Defendant had attempted to possess cocaine with intent to deliver, in violation of 21 U.S.C. §§ 841(b)(1)(A)(iii) and 846.  Accordingly, the physical evidence recovered from the scene of the arrest, and Defendant's subsequent statements made at the station were not the product of an unlawful arrest, and will not be suppressed.

### 2. Defendant's Statements at the Police Station

The Fifth Amendment guarantees the right to be free from compelled self-incrimination.  U.S. Const. amend. V.  Before a suspect may be subjected to custodial interrogation, *Miranda* warnings must be provided advising the suspect of the right to remain silent and the right to consult with an attorney.  *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966); *Rhode Island v. Innis*, 446 U.S. 291, 299-300 (1980).  A suspect may choose to waive these rights and make a statement, provided that the waiver is knowing, voluntary and intelligent, and not the product of intimidation, coercion, or deception.  *Miranda*, 384 U.S. at 479; *Colorado v. Spring*, 479 U.S. 564, 573 (1987).  A waiver is voluntary, knowing, and intelligent if "the totality of the circumstances reveal both an uncoerced choice and the requisite level of comprehension."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Here there is no dispute that Defendant was subject to a custodial interrogation at the police station and that *Miranda* warnings were required.  Defendant alleges that the Government failed to provide the warnings prior to questioning him, and that as a result, he made no knowing and voluntary waiver of

his rights.[4]  However, the court credits Agent Cook's uncontroverted testimony that *Miranda* warnings were administered prior to questioning and that Defendant stated he wished to waive his rights and make a statement.  Although Agent Cook testified that Defendant seemed a little slow, and that no inquiry was made into Defendant's educational background, the facts viewed in the totality demonstrate Defendant's waiver was knowing, voluntary, and intelligent.  Thus, the statement was not obtained in violation of Defendant's Fifth Amendment rights.

### III.     Conclusion

For the foregoing reasons, Defendant's motion to suppress will be denied.  An appropriate order will issue.

   s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  December 18, 2007.

---

[4] In his motion papers, Defendant made the additional claim that at some unspecified point during his custodial interrogation at the station, he requested an attorney, but one was not provided before questioning continued.  However Agent Bill Cook testified that Defendant never requested an attorney during questioning, and no evidence was presented to the contrary. (Suppression Hr'g, Nov. 28, 2007.)  Accordingly, the court credits Agent Cook's testimony and finds there was no violation of the right to counsel.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** : **Criminal No. 1:07-CR-153-02**
:
**v.** : **JUDGE SYLVIA H. RAMBO**
:
**JAMEL EASTER** :

# **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendant's Motion to Suppress Evidence (Doc. 56) is **DENIED**.

      s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  December 18, 2007.